## Corder's Administrator v. Cincinnati, New Orleans & Texas Pacific Railway Company, et al.

(Decided October 28, 1913).

### Appeal from Pulaski Circuit Court.

Railroads—Evidence—Submission to Jury.—In an action for damages for the death of decedent, evidence examined and held that the case should have been submitted to the jury on the question as to whether deceased was at the time a licensee or trespasser, and whether he was guilty of contributory negligence. The proof does not establish deceased's contributory negligence to the extent that the case should have been taken from the jury.

EMMET V. PURYEAR, ROBERT HARDING, W. M. CATRON, and ROBERT WADDLE for appellant.

O. H. WADDLE & SONS and JOHN GALVIN for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

John Corder, 82 years of age, was killed by a fast passenger train on appellee's railroad track on the afternoon of April 15, 1912. The accident occurred in the town, or village of Greenwood, which, from the testimony, extends along each side of the railroad track for a distance of one-half mile, and has 25 or 30 dwelling houses, a graded school with 100 pupils, two churches, postoffice, stores, blacksmith shop and station depot. The town is not incorporated, and its population is estimated by the witnesses at from 150 to 300 people.

Decedent's administrator sued appellee to recover damages, alleging that his death was due to the negligence of appellee's servants operating and in charge of the train. At the conclusion of appellant's testimony the court on motion gave the jury a peremptory instruction to find for the railroad company, and the question is whether there was any evidence warranting its submission to the jury.

The railroad runs north and south, and in front of the depot is the main track and two other sidings or passing tracks. Fifty or sixty yards south of the depot a public county road crosses the railroad at right angle, that is, is running east and west. The depot is on the west side of the track. East of the depot, that is in front of it, and near the right of way, is the store house of Eli Young, which is also about 50 or 60 yards north of the public road crossing. Other than this public road it is not shown that there is any road or place used by the public for crossing the track except a foot path leading from the depot to Young's store house. The proof shows that this pathway was used by the public generally, and the witnesses estimate that from 100 to 150 people traveled the pathway daily at the time Corder was killed. People of the town and country living west of the railroad track used it to go to Young's store, and those living east of the track used it to go to the station and elsewhere on the west side of the town.

A freight train consisting of 25 or 30 cars going north had come into the station and taken the siding. There is some conflict in the testimony as to whether the freight engine stood on this pathway, or whether it stopped just south of it, leaving the pathway unobstructed. The public road crossing, however, was blocked by the freight train, and it had been standing there so obstructing the road from 20 to 30 minutes. There was a blacksmith shop on the public road east of, but near the railroad track. Corder had been at this shop, and intending to start home perhaps, as he lived a mile or so out on the west side of the track, he went to the road crossing, and finding it obstructed walked up the track along side the waiting freight train towards Young's store and crossed the side track in front of the freight engine, and as he came upon the main track the fast passenger train, also going north, struck and killed him instantly.

About the time the passenger train was at the public road crossing, its engine crew saw Corder on the track, and they gave an instant alarm, applied the brakes, and used every means at their command to avert the accident after they saw him. The proof, however, shows that no signal or warning was given by the passenger train of its approach to the public road crossing. All the witnesses except two swear that no signal or warning was given of its approach to the station. One of these witnesses is the passenger engineer whom the plaintiff introduced,

and on cross-examination he says his engine sounded the whistle signal for the station. He does not swear that they sounded any signal for the road crossing. It is not clear whether the lower court from the proof regarded Corder as a trespasser, and, therefore, not entitled to warning or lookout, or whether he was thought to have so contributed by his own negligence in going upon the track at the time and place he did, as that otherwise he would not have been killed.

We think the case should have been submitted to the jury on the question as to whether Corder was at the time a licensee or trespasser, and whether he was guilty of contributory negligence.

The appellee urgently insists as a matter of law that Corder was a trespasser and that is the main question here. The Case of C. & O. Ry. Co. v. Nipp's Admr., 125 Ky., 49, is typical of the authorities cited to sustain its position. That case recognizes the rule that where the public generally with the knowledge and acquiescence of the railroad company have continuously used the tracks for a long period of time, the presence of persons on the track at the point where it is so used must be apprehended by the company in running its trains, and it owes to persons thus habitually using its right of way the duty of giving warning and keeping a lookout. This rule is qualified by the statement that it has been confined to cities and thickly populated communities, and has not been and will not be extended to rural communities, or sparsely settled regions.

The court by this qualification never intended to say that railroad companies owe to city residents any greater degree of care than they do to those who reside in other sections. It is not so much whether the accident occurs in the city or village as it is that there there was evidence of such long and continued use of the foot path by a large number of people as to impose upon the railroad the duty of giving warning of the approach of its trains to this point. This qualification is stated more fully in the recent case of Carter v. C. & O., 150 Ky., 525:

"The fact that the accident did not occur in an incorporated city of town cannot of itself affect the case. It is the nature and use of the crossing by the public that is to determine the applicability of the rule, which requires the lookout duty. C. & O. Ry. Co. v. Warnock's Admr., 150 Ky., 75. If the use of the track by the pub-

lic for crossing purposes was general and acquiesced in by the railroad company, it was charged with notice of such use and the trespasser became a licensee to whom the company owed a lookout duty, although the accident happened in the company's yards.''

We think the facts in this case are such that the court should have submitted to the jury the question whether the pathway had been so used by the public in order that the jury might determine whether Corder was a licensee or a trespasser. The railroad in this case claims, as above stated, that it owed Corder no duty until his presence on the track was discovered, and that since his death did not occur on the public road crossing, it is immaterial whether or not any public road crossing signal was given. This position, however, is not tenable. If the pathway was so used by the public with the knowledge and acquiescence of the appellee, then those using it had the right at least to rely upon the giving of proper signals for the nearby public road crossing. In the case of Cahill v. Cincinnati, &c., Ry. Co., 92 Ky., 345, this court held that one traveling over a private crossing had the right to rely upon the giving of customary signals at a nearby public road crossing, and the failure to give such signal is negligence to him as well as to persons traveling the public crossing.

Of course, the private crossing was shown to be of that character that the user of it was a licensee. To the same effect is the case of C. & O. v. Wilson, 31 Ky. L. R., 500.

More than this, the appellee is in poor position to complain that Corder was on the pathway, or crossing the track at a place other than the public crossing, for the road crossing was obstructed by another train, and had been for 20 or 30 minutes, and the appellee cannot relieve itself of the duty of sounding the public crossing signal by closing the road. It is true this court has held that the rule in reference to crossing signals applies only to those who are on the crossing. C. & O. v. Harrod, 132 Ky., 445. But the company is not relieved of liability if, by its failure to sound this signal, one is injured at a place on its track where the company should have apprehended his presence because of conditions and circumstances it created. The fact that this foot path was used by from 100 to 150 people daily crossing between the depot and Young's store, and that, at the time, the public road crossing was obstructed, and had

been for an unreasonable length of time so that pedestrians were forced in going over the track to use the pathway north of the freight engine, and that this was a regular railroad station, imposed upon those in charge of the passenger train the necessity of keeping a lookout, and giving reasonable warning or signals to avert just such an accident as this, and which under the circumstances should have been apprehended.

The appellee also maintains that Corder was guilty of such contributory negligence as to take the case from the jury. The facts relied upon are that the freight train was waiting there, and that Corder must have known that it was waiting for a purpose, and that that purpose was to permit another train to pass on the adjoining track, and furthermore, that he did not stop, look or listen as he came to the main track.

There is no proof to show for what purpose the freight train was waiting, or that Corder knew that another train was to pass, or that he did not stop, look or listen.

Generally, contributory negligence is a question for the jury. In this case to recover damages for death, it is a defense interposed by the appellee, and to be of any avail should have been supported by proof. Under the proof in this case, and Corder's administrator introduced all of it, the railroad company would have been entitled to an instruction submitting to the jury the question of contributory negligence, but the proof does not establish Corder's contributory negligence to that extent that the case should have been taken from the jury.

On a retrial of the case the court should submit it to the jury, and if they should find that the pathway was frequently and habitually used by the public, with the knowledge and acquiescence of the railroad company, and was a place where the presence of persons on the track was to be anticipated, that it was the duty of those in charge of the train to keep a lookout for persons using it as a foot way, and to give reasonable signals of warning of the approach of the train, and to run same at such speed as ordinary care for the safety of such persons required, and if those in charge of the train negligently failed to perform these duties, and by reason thereof Corder while on the track was run upon and killed by said train, and that he at the time was using ordinary care for his own safety, then they should be

instructed to return a verdict for the administrator, and award such damages as they believe will reasonably compensate the estate for the destruction of his power to earn money.

The court should further give to the jury instructions numbers two and three as suggested in the case of the L. & N. R. R. Co. v. McNary's Admr., 128 Ky., 423, and also instructions defining negligence and ordinary care.

The case is reversed for proceedings consistent with this opinion.