## Cumberland Railroad Company v. Walton.

(Decided October 22, 1915.)

### Appeal from Knox Circuit Court.

1. Negligence—Contributory Negligence—Injury to or Death of Person Suddenly Stepping in Front of Moving Train.—Where a pedestrian, whether a licensee or trespasser, is injured or killed in stepping upon a railroad track in front of a moving train, under circumstances which gave those in charge of the train no reason to anticipate his doing so, and which put it out of their power, by the exercise of ordinary care, to stop the train before striking

him, the act of such person in so stepping on the track is such evidence of negligence as will bar a recovery. The same is true as to an employe of the railroad company, when not acting in the performance of a duty which required him to go upon the track in front of a moving train, or when he went thereon under circumstances which gave those in charge of the train no reason to anticipate his doing so, and which put it out of their power, by the exercise of ordinary care, to stop the train before striking him.

2.    Railroads—Employe Injured on Track—Negligence of Defendant—When Question for Jury.—Ordinarily the question whether one injured on a railroad track is a mere trespasser or licensee, must depend, not on the fact that the accident happened in a city or incorporated town, but on the number of persons using the track at the place of the accident, but in such state of case the question whether the person injured is a mere trespasser or licensee should be left to the decision of the jury, under a proper instruction from the court.

3.    Negligence—Peremptory Instruction—When Authorized.—A peremptory instruction directing a verdict for the defendant, is authorized when it conclusively appears from the evidence that the plaintiff was injured in stepping upon the track in front of a moving train, under circumstances which gave those in charge of the train no reason to anticipate his doing so, and which put it out of their power, by the exercise of ordinary care, to stop the train before striking him, as in such state of case no negligence can be attributed to those in charge of the train; while upon the other hand the act of the person injured, in stepping upon the track in front of a moving train under the circumstances indicated, manifests such an absolute failure upon his part to take any precaution for his own safety, as establishes his guilt of contributory negligence, but for which he would not have been injured.

P. D. BLACK and BLACK, BLACK & OWENS for appellant.

B. B. GOLDEN and GOLDEN & LAY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE.—Reversing.

This is an appeal from a judgment entered upon a verdict awarding the appellee, William Walton, $12,000.00 damages for injuries sustained by being run over by an engine and caboose operated on the track of the appellant, Cumberland Railroad Company, in its switch yards at Artemus, this State. In view of the nature and extent of the injuries sustained by appellee, the amount recovered is not unreasonable, if the recovery was authorized at all.

The appellant's railroad lies wholly in Knox County, extends from Artemus, a village four miles from Barbourville, to Warren, where coal mines are located, and is only about eight miles in length. The principal business of the road is the transporting of coal from the mines, but in addition to its freight train, used for that purpose, it runs a passenger train, consisting of an engine and one or two old coaches, between Artemus and Warren daily. It owns no rolling stock, but leases its freight engine, coal cars, passenger engine and coaches from other railroad companies. Besides the engineers, firemen and brakeman in charge of its passenger and freight trains, it employs a small number of men, perhaps less than a dozen, in maintaining its stations and roadbed and doing other work necessary to the operation of its business.

The appellee, Walton, was employed by appellant as a car repairer and had served it in that capacity about six months prior to December 12, 1912, the day on which his injuries were received. Shortly after six o'clock on the morning of that day appellee went to the appellant's blacksmith shop in Artemus, where he made a fire in the forge and assisted in welding some irons. After this work was completed he was directed by Joshua Parrott, an employe of appellant and his foreman in the latter's service, to go to Warren for the purpose of making some repairs on the dwelling house of B. C. Milner, a son of the superintendent of the appellant company. It appears that he intended going to Warren on appellant's freight train, but that while he was away from the shop to get some tools to take with him, the freight engine and caboose, which had been standing on the main track near the station, went to the river about a half mile distant to take on sand and water, and when appellee returned to the shop he was erroneously informed by someone there that the freight train had gone to Warren, which, if true, made it necessary for him to take the passenger train soon to leave for Warren, to get aboard of which it was necessary for him to go to the depot building a hundred yards or more from the blacksmith shop. It turned out, however, that the freight train had not left for Warren as appellee was informed and that its engine and caboose, which had gone to the river, were returning on the main track to the depot when appellee left the blacksmith shop to reach the depot for the purpose of taking the passenger

train. So, when the latter left the blacksmith shop he entered a narrow footpath leading up to the railroad track where it turned and ran outside of and along the track to the depot. After walking along this path and outside of the ties for a distance of fifty or seventy feet from the blacksmith shop he left it and stepped either upon the railroad track or upon the ends of the ties outside of the rail nearest him, immediately following which act he was struck in the side or back and knocked down by the returning caboose and engine of the freight train, resulting in the injuries complained of.

The ground of recovery set out in the petition is that the appellee's injuries were caused by the negligence of appellant's servants in charge of the freight engine and caboose, in failing to reduce its speed, maintain a proper lookout and give the customary signals of its approach to the place of the accident. The answer of appellant denied the negligence charged and pleaded contributory negligence on the part of appellee.

It is appellee's contention that appellant's tracks at the place of the accident were so used by its employes and others, and such use acquiesced in by appellant, as to impose upon the latter and its servants the duty of anticipating their presence thereon and of exercising ordinary care to maintain such regulation of the speed of their moving trains and such lookout and signals therefrom, as would prevent injury to the persons using the track.

It is the contention of appellant that it owed no lookout duty to appellee and that his presence on the track at the time of the accident was not to be anticipated. That although he was its employe he was not at the time he was injured discharging any duty that he owed it; in brief, that he was a trespasser. Appellee and some of his witnesses testified that the railroad track at the place of the accident and between that and the depot was frequently used by appellant's servants and others. On the other hand, numerous witnesses introduced by appellant testified that such use of the track was only occasional; and it is apparent from the testimony of the witnesses of both appellant and appellee, that there was no necessity for such use of the track by any person, as the path from which appellee stepped on the track before receiving his injuries extended from the blacksmith shop and beyond it down to the depot; that it was of sufficient

width to enable persons going to or from the depot up and down the railroad track to walk in comfort and without danger of coming in collision with passing trains. That in addition to the safe walking afforded by the path mentioned, there was and is on the other side of the main track and between it and the only switch track in appellant's depot yard, ground or space, extending from a point above the blacksmith shop down to the depot, free of obstacles and of sufficient width to prevent contact with the train on either track, which persons, not desiring to use the path, could walk on from the blacksmith shop to the depot.

The evidence was all to the effect that appellant's right of way on each side of the tracks at the place of the accident, as well as above and below it, was fenced; that there was no railroad crossing anywhere between the blacksmith shop and depot and no residences, stores or other buildings. In view of this situation no reason is apparent for the use of either of the railroad tracks as a walkway by appellee or other persons in passing between the blacksmith shop and depot or going up or down the railroad. It may be that in switching, coupling or otherwise manipulating trains, the presence of some of the trainmen on the tracks at or near the place of the accident at times is necessary, but we can imagine no other cause for their use by other employes of appellant or pedestrians.

According to the evidence Artemus is a small village with a population of 250 or 300, and none of its residences, shops or buildings are located with respect to appellant's railroad tracks so as to require or authorize their use by its inhabitants. On the contrary, they appear to be connected by the usual streets or highways, which render every part of the village accessible, without the use of appellant's railroad tracks. For the foregoing reasons, we must sustain the contention of appellant that the facts of this case are not sufficient to bring it within the rule that where its employes required use of the track, or its use by the public generally with the knowledge and acquiescence of the railroad company, has so continued as that the presence of such employes or other persons on them at the point where the accident occurred must be anticipated by it in running its trains, it will impose upon it the consequent duty of maintaining, in approach-

ing such place of use, a lookout and giving warning of their coming.

In C. & O. Ry. Co. v. Nipps' Admx., 125 Ky., 49; L. & N. R. R. Co. v. Redmon's Admx., 122 Ky., 384; Miller's Admr. v. I. C. R. Co., 118 S. W., 348, and a number of other cases, in which it was sought to have the above rule applied, it was held that it should be confined to cities and thickly populated communities, and not extended to rural communities or sparsely settled places, although the track at those places may be used by a large number of persons. On the other hand, there are numerous later cases, such as C. & O. Ry. Co. v. Warnock's Admr., 150 Ky., 75; Corder's Admr. v. C., N. O. & T. P. Ry. Co., 155 Ky., 536; and C. & O. R. Co. v. Dawson's Admr., 159 Ky., 296, in which it was held that the question whether the party injured is a mere trespasser or licensee must depend, not on the fact that the accident happened in a city or incorporated town, but on the number of persons using the track at the place of the accident, and further, that the question should be left to the decision of the jury under a proper instruction from the court. Thus, in C. & O. Ry. Co. v. Dawson's Admr., *supra,* it is in the opinion said:

"In this case plaintiff shows that there were about 350 persons living in the town of Garrison. There was considerable travel between that point and the ferry landing. Persons going to and from the ferry landing to the depot used defendant's main track between Garrison lane and the depot. The track was used daily by about 100 persons. The decedent was between fifteen and twenty-five feet from the station platform and from seventy-five to ninety feet from the depot building. Under these circumstances it was proper to submit to the jury the question whether or not decedent was a trespasser to whom no duty was owing until after her peril was discovered, or a licensee to whom the defendant owed the duty of keeping a lookout and giving timely warning of the approach of the train."

In the instant case the evidence fails to show such use of appellant's track as imposed upon it, while operating its train, the duty of anticipating the presence of its employes or other persons on it at the place of the accident or of maintaining a lookout for them and giving warning of the movements of the train. If, however, the evidence had been stronger, and sufficient to prove such use of the

track as was shown in C. & O. R. Co. v. Dawson's Admr., *supra,* the jury should have been allowed to determine whether the facts authorized the application of the rule in question. This the trial court failed to do. In none of the instructions was that question submitted to the jury. On the contrary, instruction No. 1, erroneously assumed the applicability of the rule and the existence of the facts necessary to authorize its application. As the instructions were objected to by appellant, this error, even in the absence of the graver one committed by the court, to be presently indicated, would of itself have compelled the reversal of the judgment.

It is, however, insisted for appellee that he was, when injured, in the performance of a duty required of him by appellant's foreman, Joshua Parrott, and that fact gave him the right to go upon the track and required its servants in charge of the engine and caboose, not only to anticipate his presence on the track, but also to use such reasonable precautions in operating the engine and caboose as would have prevented his injuries. The duty required of him by the foreman was to repair a house at Warren, owned or occupied by a son of the superintendent of appellant's road. It is not apparent from the evidence that appellant was under any duty to make the repairs referred to, or, if so, that its performance necessitated his going on the track. It was not shown to be the owner of the house, or that it sustained to the occupant any contractual relation that compelled it to send one of its employes to repair it. The service required of appellee under his employment by appellant was that of repairing cars, and not the doing of work for others, with which appellant was in no wise concerned. If, therefore, the work he was directed to do for the son of the superintendent was not such as appertained to his employment nor within the apparent scope thereof, it cannot be said that its performance was a duty required of him by appellant.

In order to recover on the contention he actually makes, appellee must have shown that he was engaged in appellant's business and that it was reasonably necessary for him to go upon the railroad track at a time and place when and where the presence of employes on the track should have been reasonably anticipated. Appellant would then have owed him the duty of looking out for him and giving him a timely warning of the coming of the

engine and caboose, by blowing the whistle or ringing the bell. C., N. O. & T. P. Ry. Co. v. Troxell, 143 Ky., 770. The facts, however, do not sustain his contention, but give him a different attitude and compel the conclusion that his status at the time of receiving his injuries was that of a mere trespasser. If a trespasser, the only other question to be determined is, could appellant's servants in charge of the engine and caboose, after discovering his peril, have prevented his injuries by the exercise of ordinary care?

As to this question there is little conflict in the evidence. Appellee's own testimony throws scarcely any light on the matter, for he admitted he did not know whether he was between the rails of the track or walking on the ends of the ties when struck by the caboose and engine. He professed to know when he stepped from the path onto the track, but not where he did so nor how far he walked on the track or end of the ties before being knocked down by the caboose. He admitted he was rendered unconscious by the collision with the caboose and that he did not regain consciousness until about three weeks later. While numerous witnesses testified in the case, only two of them claim to have seen the accident. These were James Parrott, fireman on the engine pushing the caboose that struck appellee, and Arnold Rice, flagman on the passenger train then standing on the switch track. Parrott said he did not see appellee, although keeping a lookout, until "something like a thought before the caboose struck him;" and that the latter was then six or eight feet from the caboose and walking on the ends of the ties outside the rail; that he (Parrott) immediately notified the engineer to stop the engine, which was done as quickly as possible, but not until after appellee was struck and knocked down. Rice, who was standing between appellee and the depot, said he saw him come out of the blacksmith shop and walk toward the depot down the path a short distance parallel with the railroad track, and that he then stepped on the track in front of the approaching caboose, being pushed by the engine, after doing which he walked but two or three steps before being overtaken and knocked down by the caboose; that upon seeing appellee's danger he whistled to him, just before the caboose reached him or as it did so, but failed to get his attention.

The facts furnished by the testimony of these two witnesses, who alone were in a position to see the occurrence and know the circumstances, and whose statements are uncontradicted, demonstrate that the injuries sustained by appellee could not have been prevented after his presence on the track became known to those in charge of the engine and caboose.

In view of the foregoing facts it is not material whether the engine and caboose gave the statutory or any signals of its approach; nor does the speed at which they were running enter into the case. It appears, however, that its speed was six or eight miles per hour and that the bell was constantly sounded. Appellant's servants in charge thereof owed appellee no other duty than to use ordinary care to avoid injuring him after the discovery of his peril, and as he stepped upon the track at a point so near the approaching engine and caboose, his presence thereon was not discovered by them in time to prevent the train from striking him, they were not guilty of negligence, and on this ground the jury should have been peremptorily instructed to find for appellant, as requested by its counsel. Gregory v. L. & N. R. R. Co., 25 R., 1986; C. & O. Ry. Co. v. See's Admr., 25 R., 1995; Brown v. L. & N. R. R. Co., 97 Ky., 228; C. & O. Ry. Co. v. Perkins, 20 R., 608; L. & N. R. R. Co. v. Redmon's Admr., 122 Ky., 385; Hilton's Admr. v. C. & O. Ry. Co., 157 Ky., 380.

It is also patent that the peremptory instruction was authorized upon the further ground that according to the evidence appellee was himself guilty of negligence which so contributed to his injuries that but for same they would not have been received. That is to say, the evidence conclusively shows an absolute failure upon his part to take any precaution for his own safety. Thus far we have considered the case without reference to the question whether the engine pushing the caboose in approaching the place of the accident gave the usual signals or whether those in charge thereof maintained a lookout. In point of fact, the evidence conclusively shows that the engine bell was constantly ringing from the time the engine and caboose came in sight of the blacksmith shop until the accident occurred, and fairly apparent from the evidence that the engineer and fireman were also maintaining a lookout ahead of them on the track. Although in leaving the blacksmith shop appellee was facing in the

direction from which the engine and caboose were approaching,. according to his own testimony he never looked that way at all to see whether there was a train on the track. After getting upon the path paralleling the track he turned in the direction of the depot without taking a look in the direction from which the engine and caboose came. After continuing in the path for some distance, and when the caboose approaching behind him, had almost reached him, he then stepped upon the track or the end of the ties without heeding the ringing of the engine bell or looking in that direction to see if the track was clear. It is true he testified that the passenger train was then standing on the switch track but a short distance from him and that the escape of steam from its engine prevented him from hearing the coming of the caboose and engine of the freight train, but this, in view of the fact that in stepping upon the track he became a trespasser to whom no lookout duty was owing by those in charge of the engine and caboose, instead of excusing him from using ordinary care to protect himself from danger, should have made him more mindful of the need of its exercise. As said in Bauer v. I. C. R. Co., 156 Ky., 187:

"The rule in this State is that contributory negligence bars a recovery unless, notwithstanding the negligence of the person injured and after his peril is perceived, * * * the defendant could by ordinary care avoid injury to him. The traveler who by his own negligence puts himself in peril on a railroad track, cannot· recover, unless the danger may be avoided by proper care on the part of the railroad after it has notice, actual or constructive, of the danger in which his negligence has placed him. If the train was by negligence running too fast and the deceased was by negligence on the track, the injury would be due to the concurrent negligence of both of the parties, and in such a case he cannot recover for the negligence of the railroad company, because but for his own negligence he would not have been hurt; and when both parties have been negligent the law will not measure comparisons between them and make the defendant responsible on the ground that its negligence was greater than his. * * * This would be to lay down the rule of comparative negligence, and to hold that although the intestate was negligent, there could be a recovery if the negligence of the defendant, and not his, was the proximate cause of the

injury. The rule has been declared in some jurisdiction; but it has never been followed in this State.''

The facts bring this case clearly within the rule announced in L. & N. R. R. Co. v. Trowell's Admr., 131 Ky., 589; Helm v. L. & N. R. R. Co. v. 17 R., 1004; I. C. R. R. Co. v. Willis' Admr., 123 Ky., 636; Craddock v. L. & N. R. R. Co, 13 R., 18; Hilton's Admr. v. C. & O. Ry. Co., 157 Ky., 380.

For the reasons indicated the judgment is reversed and cause remanded for a new trial consistent with the opinion.