## Sizemore's Administrator v. Lexington & Eastern Railway Company.

(Decided April 14, 1916.)

### Appeal from Perry Circuit Court.

1. Railroads—Injury to Person on Tracks—Duty to Keep Lookout and Give Warning.—The rule requiring those in charge of a train to anticipate the presence of persons on the tracks and keep a lookout for them and give warning of the approach of the train cannot be extended to rural or sparsely settled communities, although the tracks at such places may be used by a large number of persons.

2. Railroads—Injury to Persons on Tracks—Duty to Keep Lookout. —Evidence examined and held insufficient to show such use of defendant's railroad tracks at the place of the accident as imposed upon it the duty of anticipating the presence of persons thereon or of maintaining a lookout and giving warning of the movements of the train; hence there was no reason for submitting this question to the jury.

3. Railroads—Injury to Person on Tracks—Duty to Trespassers.— As the decedent was a trespasser at a place where the railroad company was not required to anticipate his presence on the track, its servants in charge of the train owed him no duty other than to use ordinary care to avoid injuring him after the discovery of his peril.

4. Railroads—Injury to Person on Tracks—Duty to Trespassers.— That an accident happened within a hundred feet of a public

crossing did not make the railroad company's duty to decedent,
a trespasser, any greater.

5. Railroads—Injury to Person on Tracks—Evidence.—In an action
for damages for the death of plaintiff's decedent, evidence ex-
amined and held to show that his death was caused solely by
his own negligence and not by any negligence attributable to the
railroad company's servants in charge of the train by which he
was killed.

F. J. EVERSOLE, HOGG & JOHNSON and MILLER & WHEELER
for appellant.

WOOTON & MORGAN, SAMUEL M. WILSON, BENJAMIN D.
WARFIELD and CHARLES H. MOORMAN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE.—Affirming.

A. B. Sizemore was run over and killed November 10,
1912, by a work train owned by the appellee, Lexington
& Eastern Railway Company, and operated by its serv-
ants. The accident occurred near the village of Krypton,
in Perry county, and at a point about one hundred feet
from where a county road crosses the railroad track.
The administrator of the decedent's estate sued in the
Perry circuit court to recover damages for his death,
alleging in the petition that it was caused by the negli-
gence of appellee's servants in charge of the work train.
The answer of the appellee denied the negligence charged
in the petition and alleged contributory negligence on the
part of the decedent, and the latter plea was contro-
verted by reply. On the trial the circuit court, after the
introduction of the appellant's evidence, on appellee's
motion, peremptorily instructed the jury to return a
verdict for the latter, which was accordingly done. From
the judgment entered upon that verdict this appeal is
prosecuted.

At the time of the accident appellee's railroad had
not been completed, but had been in operation to Krypton
and for some distance beyond for about six months. No
permanent station or depot had then been established at
Krypton but trains operated on the road were stopped
at a temporary station in use there. About a quarter of a
mile west of Krypton appellee's railroad track is crossed
by a county road and the decedent was admittedly killed
at a point 100 to 110 feet west of the road crossing in
question. Whether he was then returning to Krypton
from Glenn, a store and post office on the railroad three-

fourths of a mile west of the crossing, or from a church near Glenn at which religious services were being held on that day, Sunday, does not appear from the evidence; but the evidence does show that he was walking on the railroad track and between the rails thereof at the time he was overtaken and killed by the train. Between Glenn and the road crossing near which the decedent was killed the railroad track passes through a deep cut known as the Campbell cut, the eastern end of which terminates about two hundred yards from the crossing near which the accident occurred, but between the end of the cut and the crossing there is a long sharp curve upon a heavy fill, the fill being constructed over the Campbell creek near its mouth. Between the crossing and the mouth of the cut there is no roadway paralleling the railroad track, but there was another travelled way contiguous to the railroad track which could be used and was used by persons in going from Krypton to Glenn and from Glenn to Krypton. There were perhaps a half dozen families and residences between Krypton and Glenn, but none of these residences were situated immediately upon the railroad.

Several of appellant's witnesses testified that persons in passing between Krypton and Glenn frequently and even daily walked appellee's railroad track. They differed, however, as to the number of persons using the track, the estimate ranging from ten to a larger number daily, that of one witness, the appellant, being that it was probably used by a hundred people daily. But it was neither alleged in the petition nor shown by the evidence that such use of appellee's railroad track between the points mentioned was necessary, was assented to by it, or had continued such a length of time as shows appellee's acquiescence therein. In other words, the evidence fails to show such use of appellee's track at the place of the accident as imposed upon it, in operating its trains, the duty of anticipating the presence of persons thereon or of maintaining a lookout for them and giving warning of the movements of the trains. The rule requiring these precautions upon the part of those operating railroad trains is confined to cities or thickly populated communities and cannot be extended to rural communities or sparsely settled places, although the tracks at those places may be used by a large number of persons. C. & O. Ry. Co. v. Nipp's Admx., 125 Ky. 49; L. & N. R. Co. v. Redmon's Admx., 122 Ky. 384; Miller's Admr. v.

I. C. R. Co., 118 S. W. 348. Cumberland R. Co. v. Walton, 166 Ky. 371.

There are, however, some other cases, such as Warnock's Admr. v. L. & N. R. Co., 150 Ky. 75; Carder's Admr. v. C., N. O. & T. P. Ry. Co., 155 Ky. 536; C. & O. Ry. Co. v. Dawson's Admr., 159 Ky. 296, in which it was held that the question whether the party injured was a mere trespasser or a licensee must depend not upon the fact whether the accident happened in an incorporated city or town, but on the number of persons using the track at the place of the accident; and further, that the question should be left to the decision of the jury under a proper instruction from the court; but as in the instant case the evidence failed to show such use of appellee's track as imposed upon it, while operating its train, the duty of anticipating the presence of persons on it at the place of the accident or of maintaining a lookout for them and giving warning of the movements of the train, there was no reason for submitting this question to the jury.

It is, however, apparent from appellant's evidence that appellee's servants in charge of the train on the occasion in question, in operating it, exercised all the care that could have been required of them had the deceased been a licensee. Practically all the witnesses agreed that the engine whistle was blown either as the train approached the cut or after it entered it. Jack Hibbard, an eye-witness to the killing of the decedent, testified that when the train came out of the cut it sounded the whistle three times, the deceased then being about thirty or forty yards ahead of it, but that the latter kept walking along the track and seemed to pay no attention to the whistle or noise of the train; that the train was composed of an engine, tender, two cars and a caboose, one of the cars, a flat, being in front of the engine. The witness further testified that when the train came in sight Rowlan, appellee's brakeman, was standing on the front end of the flat car ahead of the engine and that the engineer was at the same time maintaining a lookout from his cab; that Rowlan made signals with his hand and as the car got close to the decedent attempted to strike him with his hat; but whether the signals given by Rowlan with his hand were intended for the engineer or decedent the witness was unable to say. The whistling of the train while in the cut or approaching it was evidently for the crossing near which the decedent was

killed, and the three blasts heard by Hibbard after it emerged from the cut must have been given to warn the decedent of the danger he was in from the train, and if so, while the train could not have been stopped within the thirty or forty yards intervening between the flat car and the decedent, the latter could, if he had heeded the signal, have stepped from the track in time to save his life. The testimony of Hibbard is corroborated in all essential particulars by that of Isaac Hamden, the only other witness besides Hibbard who had the decedent directly in view when the train struck him. There was a diversity of statement among appellant's witnesses as to the speed of the train at the time of the accident, but it is evident from the evidence as a whole that its speed was not so great as to be unusual or unsafe in approaching a crossing.

If at the time he was struck and killed by the train the decedent was a mere trespasser upon appellee's railroad track, and such the evidence convincingly shows was his status, appellee was clearly entitled to the peremptory instruction given by the trial court. As the decedent was a trespasser, appellee's servants in charge of the train owed him no duty, other than to use ordinary care to avoid injuring him, after the discovery of his peril. It is, therefore, not material whether the train that killed him gave the statutory or any signal of its approach to the public crossing, nor does the speed at which the train was running enter into the case. Under the circumstances attending his use of the railroad track, those in charge of the train were not required to anticipate his presence thereon and it owed him no lookout duty. That the accident happened near, that is, within a hundred feet of, a public crossing, did not add to the appellant's right of recovery. A trespasser is none the less a trespasser because struck and injured on the track near a crossing. As said in Helton's Admr. v. C. & O. Ry. Co., 157 Ky. 380:

"The fact that the decedent was struck by the train near the crossing furnishes no stronger ground for a recovery than if there had been no crossing."

And as also said in L. & N. R. Co. v. Redmon's Admx., 122 Ky. 385:

"While it is the duty of those in charge of trains in approaching a public crossing, whether in a city or the country, to give the customary and necessary signals for the protection of persons having the right to use such crossing, this duty need not be performed for the benefit

of trespassers who may be using the track elsewhere.''
Willis' Admx. v. L. & N. R. Co., 164 Ky. 124.

It is manifest from the testimony of Hibbard and
Hamden, the only witnesses who were in a position to
see and know all that occurred at the time of the acci-
dent, that appellee's brakeman on the car in front of
the engine and the engineer in the cab of the engine,
though both were maintaining a lookout along the track
in front of the train, were prevented by the walls of the
cut and the great curve in the track after leaving the cut,
from seeing the decedent until the front car was within
thirty or forty yards—that is, from ninety to one hundred
and twenty feet—of him and that it was impossible for
the train to have been stopped within that distance be-
fore striking him. So, if it be assumed that the engineer
and brakeman actually discovered the decedent's peril
before the train struck him, the conclusion is inevitable
from the evidence that they could not by the exercise of
ordinary care have stopped the train in time to prevent
it from striking and killing him.

Giving to the appellant's evidence all the weight to
which it is entitled, it nevertheless failed to show that
the death of the decedent was attributable to the negli-
gence of appellee's servants in charge of the work train,
and, on the contrary, conduced to prove that it was caused
by his own negligence, as it conclusively shows an ab-
solute failure upon his part to take any precaution for
his own safety. It appears from the evidence that the
decedent was a strong, healthy man, about forty-seven
years of age, possessed of average intelligence, without
defect of vision or hearing. His conduct in walking on
the railroad track and giving no heed to the noise of the
approaching train or the whistling of its engine, which
were heard by all other persons in the vicinity of the ac-
cident, manifested a reckless disregard for his own safety
that constituted negligence of the grossest character,
which so contributed to his death that, but for such
negligence, he would not have been killed. In brief, there
is no escape from the conclusion that the decedent's
death was caused solely by his own negligence; and on
this ground, if no other had been shown by the evidence,
the giving of the peremptory instruction directing a ver-
dict for appellee was authorized.

Judgment affirmed.