## Louisville & Nashville Railroad Company v. Hyde's Administrator.

(Decided May 27, 1927.)

### Appeal from Harlan Circuit Court.

1. Railroads.—Evidence that 250 or more persons habitually used railroad tracks at or about place of accident in going from one part of yards or town to another held to present question for jury whether deceased struck by cars was licensee or trespasser.
2. Railroads.—Evidence of use of railroad tracks by employees is properly considered in determining whether use by the public at time and place imposed duty on trainmen to anticipate presence of general public.
3. Witnesses.—Testimony of widow as to deceased's habits, family, and property held incompetent, under Civil Code of Practice, section 606, in suit by administrator for husband's death; widow being necessarily interested.
4. Railroads.—Evidence of contributory negligence of decedent in not looking back to see cars approaching, when struck by cars in railroad yard, held for jury, where sound of shunted cars which struck him was probably deadened by sound of approaching train.
5. Railroads.—Instruction in administrator's suit for death of intestate, struck by shunted cars, authorizing recovery if from habitual use of tracks presence of public was to be anticipated, held error in not requiring finding under conflicting evidence that extent of use was by sufficiently large number of public to impose lookout duty.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN, J. C. ADKINS, J. C. BAKER and LOW & BRYANT for appellant.

E. H. JOHNSON and D. M. BINGHAM for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

At or about 6:30 p. m. on April 20, 1925, appellee's intestate was run over and killed by a cut of two empty cars which had been immediately theretofore switched or shunted into a side track in appellant's yards at Loyal,

Ky., upon which at the time he was laterally walking. There was no one on either of the two cars to control their movements or warn persons on the track.

In this action for damages his administrator recovered a judgment of $10,000, from which this appeal is prosecuted.

Plaintiff's pleadings rely only upon a general charge of negligence, while the answer is a denial, and in addition a reliance upon contributory negligence.

Intestate up to a short time before his death had been an employee of appellant, and was familiar in a general way with the yards at Loyal and their manner of operation. They were rather extensive yards, and had a considerable number of tracks and side tracks running at that point approximately parallel with the Cumberland river. There also ran approximately parallel with the railroad tracks, and on each side of them, two county roads; one between the tracks and the river, and the other, as we gather, on somewhat higher ground on the other side of the tracks and yard. It is a comparatively new town, and is essentially a railroad town, and in the yards there is handled considerable shipping, consisting chiefly, as may be presumed, of coal shipments and empty cars designed to carry coal.

The town at the time had a population of 1,500 or more, and a considerable portion of the residences therein were across the Cumberland river, and that part of the town was connected with the other part and the railroad yards by two bridges, one a vehicle bridge and the other a footbridge. There were also a number of houses on the higher ground on the other side of the yards, as well as a number between the river and the county road running nearest to and parallel with it. The railroad yards and parts of the town are more than three miles long, and there was considerable use by the public and appellant's employees of the tracks, both in crossing the tracks and in the lateral use of them as walkways in going from one part of the town and yards to another. Boarding cars where some of appellant's employees lived were also kept on side tracks in the yards, and at the time decedent was killed he was going to one of these boarding cars to deliver some greens for the use of some of appellant's employees.

Appellee's right of recovery, as disclosed by the evidence, was primarily based upon the extent of the use of appellant's track at the time and place of the accident

by the public in such numbers and for such a length of time as to impose upon it and its employees a lookout duty, whereby at that time and place he would be a licensee rather than a trespasser, and it was upon this theory that the trial court submitted the case.

Without going into the detail of the evidence upon this main issue, it may be stated that it tends to show that at the time and place of the accident from 250 to 400 or even more persons habitually used appellant's tracks at or about the place of the accident in a day, in going to or from one part of the town to another, or to or from one part of the yards to another, and that probably a large proportion of this number were employees of appellant.

It seems to result, therefore, without elaborating or going into detail, that there was evidence of such habitual and extensive use of appellant's yards at the time and place as to impose upon its employees in charge of trains the duty of anticipating the presence of persons on the track, and which habitual and extensive use converted decedent into a licensee as distinguished from a trespasser.

But it is earnestly and insistently argued that appellant's employees should not be embraced in estimating whether there is sufficient use by the public at the time and place to impose the lookout duty upon its trainmen; it being the argument that for the purpose of determining this question the employees are not members of the public, and that, eliminating them, there is no evidence of such use as would convert decedent into a licensee.

We are, however, relieved from the necessity of going into a lengthy discussion or a minute analysis of this question, for in the recent case of L. & N. R. R. Co. v. Philpot's Admr., 215 Ky. 682, 286 S. W. 1078, the precise question was presented and elaborately argued, and this court, after a clean-cut analysis of the question in a carefully prepared opinion, took the opposite view from appellant's distinguished counsel. It results, therefore, that appellant was not entitled to the directed verdict for which it contended, and that the case was properly submitted to the jury.

There are several objections to evidence, alleged to be incompetent, admitted for plaintiff, but we find none of them, except one, of sufficient importance to merit con-

sideration. The widow of decedent was permitted, over defendant's objection, to testify as to his sobriety, industry, and frugality, and to state that he had accumulated certain property; that she and her husband had reared, or partly reared, six children, and that decedent's purpose in going to the yards when he was killed was to deliver greens to one of the boarding cars. This evidence was designed to and may have had the effect of increasing the plaintiff's amount of recovery, and, as the widow was directly interested in the amount of the recovery, and she necessarily acquired the information to which she testified from the marriage relation, she was under the provisions of section 606 of the Civil Code of Practice an incompetent witness upon these subjects. Equitable Life Assurance Society v. Bailey, 203 Ky. 339, 262 S. W. 280, 39 A. L. R. 160; North American Accident Insurance Co. v. Caskey's Admr., 218 Ky. 750, 292 S. W. 297; Standard Accident Insurance Co. v. Strunk, 220 Ky. 256, 294 S. W. —.

It results that the widow's evidence to the extent indicated was incompetent, and, while it is not decided that this of itself would be reversible error, as the judgment must be reversed for error in instructions, attention is called to it.

It is contended also for appellant that it was entitled to a directed verdict because the admitted facts show that decedent was guilty of contributory negligence as a matter of law. The facts, in addition to those already recited, are that decedent was going along one of appellant's tracks and heard or saw a passenger train coming on that track; that he stepped over to another track, and that a switch train coming towards him on still another track went on and shortly thereafter shunted onto the track upon which he was walking, and at his rear, the two empty cars without any person upon them to control their movements or warn him or notify him of their approach. Those cars were so shunted as to be running in the same direction decedent was walking, and therefore approached him from the rear, and, as those cars on that side track approached him, the passenger train on the other nearby track approached going in the opposite direction, and presumably because of the noise made by the approaching passenger train, he did not hear the two empty cars approaching him from the rear. The contention that he was contributorily negligent as a matter of

law is based upon the fact that, while walking on the track, he did not turn and look back to see the cars that were approaching him; and it is contended that under the ruling in I. C. R. R. Co. v. Bozarth's Admr. 212 Ky. 426, 279 S. W. 636, he was thereby contributorily negligent. The facts, however, of the two cases are essentially different. In the Bozarth case the decedent was walking along a walkway near to the railroad track, and, when he came to a cattle guard, without taking the precaution to look around to see whether a train was approaching, he stepped upon the track right in front of a train and was killed. In this case, when appellant went upon the side track where he was killed, there was no train or cars upon it, and the sound of the movement of the two cars which came up behind him was probably deadened by the sound of the approaching passenger train so that he had no notice of the approach of the two cars which ran over him. A moment before he was killed the two cars were not upon the side track, and the facts seem to present a case at least where the question of contributory negligence was for the jury.

We find, however, that the first instruction was fatally defective in failing to properly submit the question as to the use of defendant's tracks so as to impose the lookout duty. That instruction authorized a recovery for the plaintiff if the jury believed—

"from the evidence that the tracks and premises of the defendant railroad company at the point and place in question were habitually used by the public and employees of defendant company at and near the time that plaintiff's intestate was killed, and the presence of persons on the track at that time and place was reasonably to be expected."

It will be observed that this instruction imposed a lookout duty if the use of the track at that place was habitually used without reference to the extent of such use or the number of persons that habitually used it at that place. As was said in L. & N. R. R. Co. v. Banks' Admr., 195 Ky. 804, 243 S. W. 1018:

"The determining factor in a case of this kind is not the habitual use of the track by the public. It may be habitually used by all the public that passed that way, but the number of persons so passing may be very small. Therefore, in order to convert tres-

passers into licensees, it is necessary that the track be habitually used by the public in such large numbers that the presence of persons on the track be anticipated.''

This error or oversight in the instruction becomes important and necessarily prejudicial in the light of the conflicting evidence as to the extent of the use by pedestrians of appellant's tracks at the time and place indicated. There is some evidence that not exceeding 6 to 10 or 15 used the track in a day at that point as a walkway; and, as the very basis of the doctrine is that there shall be not only such habitual use, but such extensive use as to impose upon trainmen the duty of anticipating the presence of persons at such place, it was obviously prejudicial not to include the idea that the use must have been in such large numbers, with the knowledge and acquiescence of the company, as would impose upon its trainmen the lookout duty. See, also, L. & N. R. R. Co. v. Horton, 187 Ky. 617, 219 S. W. 1084; L. & N. R. R. Co. v. Eversole's Admrx., 198 Ky. 502, 248 S. W. 1026; and L. & N. R. R. Co. v. Philpot's Admr., 215 Ky. 682, 286 S. W. 1078.

We perceive no other prejudicial error, but, because of the error in instruction No. 1, the judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.