## Louisville & N. R. Co. v. Bush's Adm'x.

March 7, 1941.

646

H. T. Lively, J. Miller White, H. L. Bryant and J. C. Baker for appellant.

C. B. Spicer for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Just after dark on the evening of December 7, 1938, James Bush was killed in the northern outskirts of the corporate limits of the town of Cumberland, in Harlan County, while walking on the track of appellant and defendant below, Louisville and Nashville Railroad Company—his death being produced by collision with a freight train composed of the engine, tender and about forty coal cars. It occurred at a point some one hundred yards north of a grade crossing known in the record as "Green Cornett" crossing—the name being derived from the fact that a Mr. Cornett conducted a merchandise business at or some point near that crossing. Not far from the place of the collision was the office of Dr. Kauffman, to which Bush was carried after the collision, he not having been instantly killed. Some emergency treatment was given him by Dr. Kauffman and he was thence immediately removed to a hospital at Lynch, where he later died.

His wife was appointed and qualified as his personal representative, and she filed this action against appellant and defendant below to recover damages sustained by the estate of the deceased on account of his

death, which she averred was due to the negligence of its agents and servants in charge of the colliding train, it being averred that the point of the collision was in a thickly settled community and wherein great numbers of people used the track as a passway in sufficient quantities to clothe the users with the rights of licensees to whom the operators of trains on the track at that point owed a lookout duty and the exercise of other precautionary measures for the safety of those who might be using the track under such acquiescing privilege. The doctrine has become a settled one in the law, and especially in this jurisdiction, but as to when it should or should not be applied is by no means certainly ascertained by any fixed and definite standard. However, it has been so judicially determined by this court in a number of cases, some of which are Henson's Adm'r v. Hines, 193 Ky. 198, 235 S. W. 359; Howard v. Illinois Cent. R. Co., 189 Ky. 60, 224 S. W. 635; and Louisville & N. R. Co. v. Stidham's Adm'x, 194 Ky. 220, 238 S. W. 756. The cases point out that the extensiveness of the use of the track by pedestrians in the manner indicated must exceed more than one hundred and fifty persons each day and that in any event such use by a less number of persons will not create the right to maintain the action upon the ground relied on. The foundation of the right is, of course, bottomed upon the humane purpose of safeguarding thoughtless members of the public from injury or death growing out of their acknowledged and admitted carelessness in walking upon the railroad track with the knowledge and acquiescence of the railroad company, or where the practice has been continued for a sufficient length of time to justify the inference that it was aware thereof and acquiesced therein. In such circumstances it is concluded, and so announced as a sound principle of law, that operators of trains over portions of tracks thus encumbered with pedestrian traffic, acquiesced in by the carrier operators, must anticipate the presence of persons on the track at such places and exercise the necessary and prescribed precautions for their protection, notwithstanding they would otherwise be treated and regarded as unqualified trespassers. The principle, therefore, sprouted from a humane purpose to furnish protection to such thoughtless travelers at places and under the circumstances we have described.

The answer of defendant denied the material aver-

ments of the petition, coupled with a plea of contributory negligence on the part of the decedent, which in turn was denied by plaintiff. At the trial there was a verdict in favor of plaintiff for $4,500, upon which the court pronounced judgment after overruling defendant's motion for a new trial, to reverse which it prosecutes this appeal. The motion for a new trial contains twelve separately designated grounds, some of which are duplicates of others, and many of which we regard as without merit, but among them are (1) error of the court in overruling defendant's motion for a peremptory instruction, made both at the close of plaintiff's testimony and at the close of all of the testimony, and (2) erroneous instructions given by the court upon motion of plaintiff, and refusal to give instructions offered by defendant. After a careful and most painstaking study of the record, we have concluded that the determination of the appeal hinges upon a proper determination of the two stated grounds, each of which will be considered and determined in the order named.

■ In considering ground (1) we are met at the threshold with the extremely doubtful sufficiency of the proof to show that the place where the fatal collision occurred was one within the principle of law above outlined. There was but one witness who testified positively as to the extent of the pedestrian use requisite to create the right of action upon the ground stated, if indeed he did so. All of our prior cases upholding and sustaining the right of action upon the ground relied on by plaintiff not only say that there must be more than one hundred and fifty persons per day who use the track for pedestrian travel, but also that the place must be in a thickly settled community and that the travel must be upon the railroad track, or sufficiently near to it as to expose the traveler to danger from passing trains. Such travel over a passway located on the right of way a sufficient distance from the track as not to endanger travelers over it from collision by passing trains would not create the right of action under the principle of law under consideration, since in that event there would be no danger to travelers which operators of railroad trains are required to anticipate and guard against. In this case it is shown by the express testimony of the witnesses, and by photographs of the track as it existed at the time of the collision, that there was a well-beaten

path beyond the ends of the crossties of the track, sufficiently distant therefrom as to make travel in it free from possible collision with passing trains, and if decedent had been within that path, which the photograph shows had a smoother and better surface upon which to walk, he would not have been in the wake of the train that collided with him. Instead, however, he saw proper to appropriate the space between the rails of the track and thus place himself where a collision would be inevitable, unless relief from his perilous situation was voluntarily made by himself, or by some appropriate action on the part of the operators of the colliding train.

A similar situation was presented to this court in the case of Cumberland Railroad Company v. Walton, 166 Ky. 371, 179 S. W. 245, in which we denied the benefit of the principle upon which this action is based to a pedestrian traveler in like circumstances, and who stepped from the pathway on to the track so near an approaching train as to prevent avoidance of the collision with him. But, however that may be, the testimony in this case shows that only one person saw deceased and his location at *the time* of and *immediately* before the collision, and that witness was the engineer of the train. It was traveling north, leaving the town of Cumberland, and was within a curve at a point in a cut through the foot of a mountain. On the inside of the curve the cut left a considerable bluff. Before arriving at that point the train had passed over a grade crossing upon the approach to which regular signals were given and heard by witnesses testifying for each litigant in the case who were near to the scene of the accident. Just as the curve was rounded and immediately preceding the collision (which was the usual point for that purpose), the engineer began to give signals, consisting of four blasts of the whistle, so that the agent at the depot might indicate whether or not the train should stop for orders; and that just as the second signal was given he, the engineer, discovered deceased on the track some forty feet ahead of the engine and walking towards it. The finishing of the signals was abandoned and all precautionary measures were immediately taken, to indicate the approach of the train, and to stop it in emergency, but to no avail. However, it did stop within less than one-half of its length and the engineer with other members of the crew, went back to the point of collision with lan-

terns where they found the injured body of the deceased, and they with some boys who had arrived from a nearby theater craried it to the office of Dr. Kauffman.

That testimony of the engineer stands uncontradicted in this record, although a witness for plaintiff by the name of Otis Scott testified to having seen deceased before then on the track somewhere in the neighborhood of the point where the accident happened and at that time, as we gather from that witness' testimony, he (deceased) was traveling in an opposite direction, which would have made him and the colliding train going in the same direction with his back to the train; but it clearly appears from Scott's testimony that he was referring to a different train which passed the point of the collision some considerable time earlier than the one that later produced it. This is not only conclusive from other testimony in the case, but Scott said that the train to which he referred never made any stop at or near the Cornett crossing but which the colliding train undoubtedly did, as everyone who testified in the case so stated.

Moreover, it was shown that not long before the colliding train passed over the point of collision there was another one traveling in the same direction, which was, no doubt, the one referred to by the witness Scott, and which other facts and circumstances in the case would strongly indicate as being correct. Another fact supporting the theory that deceased at the time of the collision was meeting the train with which he collided with his face toward it was testified to by a witness by the name of Spurlock, who was engaged in some sort of concrete work at or near the Cornett crossing. Some short while before the collision he saw decedent at or coming from a spring near to that crossing, and south of it and in an opposite direction from the point where the collision occurred. Therefore, in order to get to that point deceased would necessarily be traveling with his face toward the approaching train. The witness stated that he did not observe where or in what direction deceased went after witness saw him at or about the spring. There is, therefore, no way of escaping the conclusion that deceased was not only traveling between the rails of the railroad track and not in the safe pathway paralleling it, but he was also facing the approaching train, and which clearly made him guilty of the grossest neglect for his own safety. It was also proven by the

physician that the breath of deceased was strongly tinctured with the odor of alcohol, and which no one contradicted, except plaintiff, his widow, who made a short visit at the hospital, but who did not testify to an opportunity for discovering the fact to which the physician testified.

A most active witness on behalf of plaintiff, to whom we have heretofore referred, who admitted that he had been working up the case for her, and a companion of his by the name of Estep, claimed to have seen the body of the deceased in the air immediately following the collision, but neither of them saw the collision itself, nor did they see the direction the deceased was traveling at the time of the collision and immediately preceding it. They testified that the engine had no headlights. But a great number of witnesses, some of whom testified for plaintiff, contradicted their testimony on that point which, taken in connection with their clearly manifested bias, greatly weakened the credibility of their testimony, which was contradicted on many points to which they testified other than the absence of lights on the engine. The extremely active witness, occupying the position of general in command of the plaintiff's forces, was one Oscar Yeary, who, with his companion Estep, claimed to have been at the next crossing south of Cornett crossing, which was still farther away from the point of collision when they claim to have seen the effects of the collision as testified to by them.

We have had occasion to deal with such situations as presented by this record in a number of other preceding cases and in which we, without hesitation, declared that a directed verdict for the defendant should have been given. Among them are: Sizemore's Adm'r v. Lexington & E. R. Co., 169 Ky. 497, 184 S. W. 383; Louisville & N. R. Co. v. Sizemore's Adm'x, 221 Ky. 701, 299 S. W. 573; and Gregory v. Louisville & N. R. Co., 79 S. W. 238, 25 Ky. Law Rep. 1986. In them and others that have followed them the injured pedestrian was traveling in an opposite direction from which the train was approaching and, therefore, facing it, and in each of them we directed that a verdict in favor of defendant should have been given. Compare also the late cases of Louisville & N. R. Co. v. Brock's Adm'r, 281 Ky. 240, 135 S. W. (2d) 898; Louisville & N. R. Co. v. Welsh, 272 Ky. 120, 113 S. W. (2d) 879; and Chesapeake & O. R.

Co. v. Conley's Adm'x, 261 Ky. 669, 88 S. W. (2d) 683. The Brock and Conley cases deal more directly with the question of knowledge of the approach of the train to the injured person than with other questions involved in this case, and in which it is pointed out that such knowledge may be inferred from the proven circumstances of the case and to have been acquired by the injured one, although signals of the approach were not given and which arises when it appears from the universality of the nature of the testimony that the train's approach was heard and known by practically everyone surrounding the fatal spot. We have refrained from citing a number of cases dealing with situations such as we have here, and in which the questions here involved were presented and disposed of adversely to the contention of appellee in this case, but which cases are, no doubt, familiar to the members of the profession and it would unduly lengthen this opinion to incorporate them as a part of it, much less to insert excerpts therefrom. The cases are easily accessible in the Kentucky Digest, which this opinion is not intended to supplant. We, therefore, conclude that ground (1) is meritorious, and under the condition of the present record defendant's motion for a peremptory instruction should have been sustained, and which brings us to a consideration of the last ground, No. (2).

■ Our disposition of ground (1) disposes of the instant appeal without considering ground (2), but since there might be a second trial, and inasmuch as ground (2) is well taken with reference to certain instructions given and offered, we deem it proper to consider, also, this ground (2) by which the court may be guided if a second trial should be had. Instruction No. I attempted to submit to the jury the question as to whether or not the place of the accident and the amount of travel thereon were sufficient to create the ground of liability relied on by plaintiff, and in doing so it required the jury to believe from the evidence that "The points in question was habitually used by the public at the time of day upon which the evidence shows the deceased, James Bush, was killed and that the presence of persons on the tracks at that place and time was reasonably to be expected," etc. If the jury so found, they were then told that it became the duty of the defendant to then take the precautionary measures required under such conditions.

The instruction did not submit to the jury the approved *extent of use* by the public of the place where the accident happened in order to create the imposed duty upon the operators of trains. That use is one made by "a large number of the public," and not such as is made by one or a few members of the public, as is clearly pointed out by us in the case of Louisville & N. R. Co. v. Hyde's Adm'r, 221 Ky. 39, 297 S. W. 814, 816, the opinion in which—in criticizing an instruction similar to the one now under consideration, says: "The determining factor in a case of this kind is not the habitual use of the track by the public. It may be habitually used by all the public that passed that way, but the number of persons so passing may be very small. Therefore, in order to convert trespassers into licensees, it is necessary that the track be habitually used by the public in such large numbers that the presence of persons on the track should be anticipated."

The same ruling was made in the later case of Louisville & N. R. Co. v. Foust, 274 Ky. 435, 118 S. W. (2d) 771, and both of those opinions were approved in the still later case of Louisville & N. R. Co. v. Arrowood's Adm'r, 280 Ky. 658, 134 S. W. (2d) 224. See also Stanley's Instructions to Juries, Sections 655 and 658, to each of which is appended a long list of domestic cases supporting the instructions therein approved. The error, therefore, in instruction No. I is itself sufficient to authorize a reversal of the judgment independently of the error pointed out in considering ground (1).

We are also of the opinion that instruction "C" offered by defendant should have been given to the jury—it being the reverse of instruction No. I in concrete form and which seems to be approved in the cases of Cumberland Railroad Company v. Girdner, 174 Ky. 761, 191 S. W. 873, and Cincinnati, N. O. & T. P. R. Co. v. Francis, 187 Ky. 703, 220 S. W. 739. Ground (2) will not be further elaborated upon, since what we have already said in considering it is sufficient to outline to the court the correct instructions to be given the jury should another trial develop facts authorizing a submission of the issues to it, and we, therefore, see no purpose to be subserved in its further discussion.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.