## Paducah Traction Company v. Tolar.

(Decided January 7, 1915.)

### Appeal from McCracken Circuit Court.

1.  Carriers—Street Railway Companies—Duty Toward Passengers.—
    Conductors on street cars are under a duty to passengers to
    exercise care to protect them from danger whether this danger
    arises from the negligence or thoughtlessness of the passenger
    or other causes.

2.  Carriers—Duty Toward Passengers Alighting From Cars—Care
    Required of Conductor.—Where a passenger on a street car, in
    the night time, believing the car had stopped or was about to
    stop, when in fact it was running at a high rate of speed, mani-
    fested a purpose to get off and did get off in the presence of the
    conductor, it was his duty, if he knew the purpose of the passen-
    ger, to make a reasonable effort to warn the passenger of the
    danger, and his failure to do this was negligence on the part of
    the Company, for which the passenger, who was injured when he
    stepped from the car, was entitled to damages.

3.  Carriers—Duty Toward Passengers.—A conductor or person in
    charge of a street car, if he discovers a passenger in the act of
    doing something that will place him in peril, is under a duty to
    warn the passenger of the danger, and his failure to do so is
    actionable negligence.

WHEELER & HUGHES for appellant.

BERRY & GRASSHAM and L. B. ALEXANDER for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, as plaintiff, brought this suit against
the traction company to recover damages for personal
injuries sustained, as she alleged, by the negligence of
the conductor on a car on which she was a passenger.

The petition as amended charged, in substance, that,
desiring to alight from the car on which she was riding
at the intersection of Third and Jackson streets, she
so informed the conductor, who rang the bell for the car
to stop, and then went back to his place at the rear end
of the car where the conductor was accustomed to stand.
That soon after this she left her seat and went to the
rear end of the car for the purpose of getting off, and,
believing that the car had stopped when it was in fact
moving, she attempted to alight and was thrown to the
ground, receiving the injuries complained of. That at
the time it was dark and the car was moving so smoothly
that she could not tell that it had not stopped.

She further averred that when she went to the rear platform of the car for the purpose of alighting, she passed immediately by the conductor, who stepped out of her way for the purpose of allowing her to get off, when he knew that the car was running, and negligently and carelessly allowed her to walk from the car while it was in motion without warning her of the danger or giving her notice that the car had not stopped.

The answer of the traction company was a traverse and a plea of contributory negligence, accompanied by the charge that the appellee stepped from the car while it was in full motion under the following circumstances: "While said car was about the middle of the block between two streets, without warning or notice to the officers in charge of the car, the plaintiff left her seat and immediately left said car while the same was in motion, as she knew at the time."

The appellee, in her own behalf, testified that when she told the conductor that she wanted to get off, he pulled the bell cord, and she got up from her seat and started out, thinking the car was about to stop. That when she got to the rear end of the car the conductor was standing there and facing her when she went down the steps for the purpose of getting off. That she did not know the car was running and the conductor did not do or say anything to give her notice that the car was running or that it was dangerous to get off.

T. F. Kettler, a passenger on the car, said, in substance, that appellee arose from her seat in the middle of the car, while it was in full motion, and in going out of the car to get off went by the conductor, who stepped out of her way so that she could pass.

George W. Muller, a witness for the traction company, who was also a passenger on the car, said that when appellee got off the car it was running ten or fifteen miles an hour and near the middle of the block.

J. F. Muller, another passenger, gave, in substance, the same evidence.

W. A. Strong, the conductor, testified that appellee said to him: "I want to get off at Jackson. She came to the door; I rang the bell. I said, 'You can get off at Ohio.' She said, 'I want off here,' and stepped right off." He further testified that he did not know she was going to get off, and that the car at the time was running ten or fifteen miles an hour. That he attempted to

grab her as she left the car, but could not do so. That he did not know she intended to get off.

Briefly re-stated the evidence for the plaintiff was that when she notified the conductor that she wanted to get off, he rang the bell, and, thinking that the car was about to stop, she went to the rear end for the purpose of getting off, passing immediately by the conductor, who knew the car was running, and that she intended to get off, but he did not give her any warning or notice of the danget or attempt in any manner to prevent her from getting off. That at the time it was dark, and when she stepped off she did not know the car was running.

While the evidence for the traction company is that when the conductor rang the bell to notify the motorman to stop the car at the next crossing, the appellee got up and walked off the car when it was running ten or fifteen miles an hour, without giving any notice to the conductor of her intention to get off, and he did not know her purpose in time to prevent her from getting off.

With the evidence in this condition, the court, omitting the instruction on the measure of damages, told the jury in instruction number one that ''If you shall believe from the evidence in this case than on the occasion complained of by the plaintiff, and when she undertook to get off the defendant's street car on said occasion, and before same had been stopped, that the conductor in charge of said street car knew that said car was still in motion, or by the exercise of ordinary care could have known it, and that plaintiff did not know that said car was in motion, but believed same had been stopped, and that said conductor saw plaintiff when she was making an effort to get off of said car in time to have warned her that said car had not stopped, or was still in motion, and thereby prevent her from stepping from said moving car, and failed to do so, then the defendant is chargeable with negligence, in this case, and the law is for the plaintiff, and you will so find.''

And in instruction number two the court told the jury: ''But the court further instructs you that defendant's conductor was not bound to anticipate that plaintiff would attempt to alight from said moving car, and unless you shall believe from the evidence that defendant's conductor in charge of said car discovered plaintiff's intention to alight from said car, while same was in motion, and after so discovering said intention, said con-

ductor could have, by ordinary care, warned the plaintiff in time to have prevented her from stepping from said car, and failed to do so, then the law is for the defendant, and you will so find.''

And in instruction number four the jury were told:. ''The court further instructs you that if you believe from the evidence in this case that at the time and place complained of by plaintiff, she left her seat in defendant's car and attempted to get off of said car while same was in motion, and which she knew to be in motion at the time, and at a place where she knew it did not stop to discharge passengers, and this without any notice or warning to defendant's conductor in charge of said car, then the law is for the defendant, and you will so find.''

Under the evidence and instructions the jury returned a verdict for small damages, and judgment went accordingly.

That the appellee left the car about the middle of the block while it was running at a high rate of speed, is not disputed, and so, unless the conductor of the car was under a duty to protect the appellee if he knew she was about to leave the car, the company is not liable. If, however, the appellee did not know the car was running, and the conductor knew that it was—and he testifies that he did—we think it was his duty, if he knew that appellee was about to leave the car, to warn her of the danger in so doing.

Conductors on street cars are under a duty to passengers to exercise care to protect them from danger whether this danger arises from the negligence or thoughtlessness of the passenger or other causes. The duty of a carrier does not stop with protecting passengers from the negligence or misconduct of its employes, other fellow passengers or strangers, but extends to protecting them from perils created by their own conduct, when notice of the danger to which they are subjected is brought to the attention of the persons in charge of the train or car; Louisville Ry. Co. v. Wilder, 143 Ky., 436. The passengers on street cars are under the care and, in a measure, in the custody of the conductor, and he must not knowingly permit them to be injured if by the exercise of ordinary care he can prevent it.

It is true that it is quite a common and usual thing for passengers to leave cars before they stop and to get on them before they stop, and, generally speaking, passen-

gers who get on or get off cars that they know are running, take the risk of any injury that may happen to them, subject to the qualification that it is a question for the jury to decide whether, considering the age and discretion of the party so alighting and the surrounding circumstances, it was negligence or lack of ordinary care on his part to try to get off the car. Ford v. Paducah City Ry Co., 29 Ky. L. R., 752; Louisville Ry. Co. v. Williams, 30 Ky. L. R., 493.

But here, when the appellee attempted to alight the car was in the middle of the block and running at a rate of speed that made it necessarily dangerous, especially for an elderly woman, as appellee was, to attempt to get off. And while the conductor, in the exercise of ordinary care, might not be required to take notice of the action of a passenger able to take care of himself in alighting from a car running at a slow rate of speed, it is perfectly obvious that when a conductor sees a middle-aged woman in the act of getting off a car running at ten or fifteen miles an hour, he cannot help but know that it is a most unusual and uncommon thing to do, as well as extremely dangerous, and under conditions like this the duty the conductor is under to protect the passengers requires that he shall make reasonable effort to prevent the passenger from getting off, if he knows his purpose. A conductor cannot shut his eyes and say he did not see or know what was going on when his duty in looking after the safety of his passengers requires him to see and know, and, according to the evidence of appellee, the conductor could not have avoided knowing that when she walked by him her purpose was to get off.

In South Covington & Cincinnati Street Ry. Co. v. McCleave, 18 Ky. L. R., 1036, a passenger whose arm was protruding through an open window was injured when it came in contact with the girders of a bridge. On the trial of the suit against the railway company to recover damages, the court told the jury that they should find for the plaintiff if they believed from the evidence that the conductor in charge of the car saw the plaintiff with his arm out of the window of the car so as to be in danger of being struck by any part of the bridge in time to have warned him of his peril before the accident occurred, and failed to do so. In approving this instruction, the court said:

"No degree of contributory negligence on the part of even a trespasser will release a person in charge of

a train or single car, whether operated by steam or electricity, from the legal obligation to use reasonable effort to avoid injuring him if his peril is discovered in time to do so, and we do not see why the conductor of an electric or steam car should not be held to the duty of giving warning to one of his passengers when he actually sees him in a position or place on the car of peril to life or limb.''

In Blue Grass Traction Co. v. Skillman, 31 Ky. L. R., 480, Mrs. Skillman, who was a passenger on a street car in the night, supposing that the car had stopped, when in fact it was running, stepped off and was hurt. In sustaining judgment for the plaintiff, under evidence somewhat similar to the evidence in this case, the court said:

''The conductor was bound to know when the people followed him to the door, after he had announced the station and opened the door for them, that they were coming out of the car for the purpose of alighting, and it was incumbent upon him to warn them of the danger; for he knew the car had not stopped, and he could not but know from their actions that they were coming out to get off. Mrs. Skillman passed right by him as she went down the steps to get off; he could see plainly that she was going to get off if he had paid attention to what was going on; it was incumbent upon him, under the circumstances, to pay attention, as it was dark and the car moving so smoothly that a person would not perceive the danger.''

If appellee went out of the car in the manner related by her, then it was a question for the jury to say whether she knew the car was running and whether the conductor should not have warned her of the danger and endeavored to protect her; and if the jury believed her version of the affair, as evidently they did, it was their right to award her damages.

On the other hand, if, as stated by the conductor, he did not know her purpose or have opportunity to arrest her action, the company was not guilty of any negligence, and there should, and doubtless would, have been a verdict in its favor had the jury accepted the conductor's story of the accident.

The instructions, we think, aptly presented the law of the case as we understand it, and the judgment is affirmed.