# Cincinnati, New Orleans & Texas Pacific Railway Company v. Francis.

(Decided April 23, 1920.)

## Appeal from Lincoln Circuit Court.

1. Carriers—Injury to Passenger in Alighting From Train.—It is the duty of a carrier of passengers to stop its trains long enough at its stations to afford passengers a reasonable time to alight therefrom with safety; but it is the corresponding duty of the passenger to get off of the train without unnecessary delay, and if the train stops a sufficient time to enable the passenger in the exercise of ordinary care and reasonable effort to alight therefrom, the carrier will not be liable for injury sustained by the passenger in an effort to alight after the train starts, unless those in charge of the train see his perilous situation and fail to exercise ordinary care to prevent his injury.

2. Carriers—Injury to Passenger in Alighting From Train—Negligence.—If, however, the train fails to stop a sufficient time to enable the passenger to safely alight under the circumstances

named, it is not negligence per se for the passenger to attempt to alight after the train starts in order to avoid the inconvenience of being carried beyond his destination, unless the speed of the train is such that a reasonably prudent person would not undertake it, in which latter event the negligence of the passenger will prevent a recovery although the carrier was derelict in its duty in starting the train before the lapse of reasonable time.

3   Trial—Instructions.—Where a party is entitled to a concrete instruction, and offers one upon the subject, it is the duty of the court to give a concrete instruction on that subject, although the one offered is erroneous.

4   Carriers—Injury to Passenger in Alighting—Negligence.—The defendant carrier insisted that plaintiff, its passenger, was guilty of negligence in attempting to alight from the train while it was in rapid motion, which contention was largely sustained by the testimony. It was the duty of the court to give a concrete instruction submitting this phase of plaintiff's contributory negligence.

JOHN GALVIN and K. S. ALCORN for appellant.

GEORGE D. FLORENCE and EMMETT PURYEAR for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Alleging that he sustained personal injuries through the negligence of the defendant and appellant, Cincinnati, New Orleans & Texas Pacific Railway Company, while as a passenger he attempted to alight from one of its trains at Junction City, plaintiff and appellee, Henry Francis, brought this suit against defendant to recover $2,500.00 damages on account thereof, and upon trial there was a verdict in his favor for $700.00, upon which judgment was rendered, and defendant's motion for a new trial having been overruled, it prosecutes this appeal.

The petition, after alleging the usual inducement facts, and that plaintiff had gone to the platform or steps of the car for the purpose of alighting therefrom, states: "And while in said position on said platform and steps he was, by the gross carelessness and negligence of the defendant, its agents and servants in charge of said train, thrown from said steps and car to the ground by the sudden jerk and movement of said train, . . . and the said train negligently started and threw him off before he was given a reasonable or any chance or opportunity to alight therefrom, and without any warning that same would move or start, and the said company,

its agents and servants were guilty of gross negligence and carelessness in starting said train without giving him any chance or opportunity to alight therefrom, and without giving him any notice or warning that said train would start and move at the time and place aforesaid, and plaintiff avers that at the time of the accident and injury to him he was exercising the highest degree of care for his own safety, and the said injury to him was caused by the gross carelessness and negligence of the defendant, its agents and servants in charge of said train."

The answer contained a denial of the averments of the petition and a plea of contributory negligence, which latter plea was denied, thus completing the issues.

The grounds urged for a reversal are (1) error in overruling the defendant's motion for a peremptory instruction; (2) the verdict is flagrantly against the evidence, and (3) failure of the court to properly instruct the jury.

Briefly considering grounds (1) and (2) together: The accident occurred between twelve and one o'clock in the aftenoon of December 25, 1917. Plaintiff and his son, Whit Francis, had gone to Lexington the evening before for the purpose, as they state, of seeing another son of plaintiff who was mentally afflicted and confined in the Eastern Kentucky Hospital for the Insane. They arrived at Lexington about eight o'clock that evening, made no effort to see the afflicted son, but remained in the depot all night, and Whit states in his testimony that they made inquiry and endeavored without success to find a train to return home that night without accomplishing the purpose of their visit. They left Lexington for home about twelve o'clock the next day. About nine o'clock, according to the testimony of both plaintiff and his son Whit, the latter bought a half pint of whiskey, from which each of them took two drinks about the time they left for home, which was all the whiskey they say they drank. They rode in the compartment for white passengers commonly known as the smoker, and when they arrived at Junction City, Whit, with other passengers, alighted at the usual place, and the son started up the platform, and hearing some noise he turned and observed his father lying upon the ground, but he did not go to his rescue, saying that he "hated to." Plaintiff was taken into the depot, where he remained for awhile, took dinner

with a friend, then returned to the depot, where he remained until eleven or twelve o'clock that night, when he took a train for his home at Stanford.

In stating how the accident happened, plaintiff's testimony is very confusing, as well as contradictory. He states that he followed his son out of the car, and that as he got upon the steps of the coach the train started and threw him from the car. At another place in his testimony he states that the train had started before he got out of his seat, and that he did not attempt to alight until after the train was in motion. He nowhere stated the length of time the train stopped, nor is there any testimony given by plaintiff or any of his witnesses to show that the stop was shorter than usual, or that it was insufficient to enable him to alight with safety. It is shown that plaintiff fell about two and one-half or three car lengths from the point where the train stopped and where he should have alighted, and the uncontradicted testimony introduced by defendant shows that the train was then traveling from three to five miles per hour. Plaintiff was the only witness who testified in his behalf as to the facts leading up to and accompanying the accident. A number of witnesses for defendant, including employees as well as bystanders who were not employees, testified to such facts, and they with one accord say in substance that the train stopped four to six minutes, which was longer than its usual time, because of an excessive amount of baggage to be unloaded, and that after the train started plaintiff appeared at the top of the steps, and was acting as though he intended to jump off of the train, when the agent of defendant warned him not to attempt to leave the train, which warning he did not heed, but attempted to alight after the train had gone about three car lengths, and sustained his injuries.

Plaintiff was the only witness who testified to any jerk of the train; on the contrary, a number of them who testified for the defendant said there was no jerk, unusual or otherwise. Some of the witnesses stated that it appeared to them that plaintiff jumped from the train, and the overwhelming weight of the testimony sustains this theory. At least two witnesses who were non-employees of defendant testified that plaintiff, after the accident and while in the depot, was considerably intoxicated, but this fact, if true, would not excuse defendant from the performance of its duties to plaintiff as a pas-

senger, but it is a circumstance bearing upon the question of plaintiff's contributory negligence.

From a review of the entire testimony we have with some hesitation arrived at the conclusion that there was perhaps sufficient testimony to justify the submission of the case to the jury, and that the error relied on in ground (1) will have to be overruled, but we are firmly convinced that the verdict is flagrantly against the evidence, as contended for in ground (2), and for this reason alone a new trial should have been granted.

The facts of this case are almost identical with those in the case of Illinois Central Railroad Co. v. Long, 128 S. W. (Ky.) 890, and on a second appeal reported in 146 Ky. 170. That was a suit by plaintiff to recover damages for an injury alleged to have been sustained while alighting from a train, just as in the instant case, and plaintiff was the only witness who testified to any facts even remotely sustaining the allegations of her petition. The railroad employees, as well as others present, contradicted her testimony, as they did that of plaintiff in the instant case. On the first appeal, which was from a judgment in her favor, a reversal was ordered because the verdict was flagrantly against the evidence, the court saying:

"Her statement that the injuries of which she complains were caused by the movement of the train is not supported by any other witness or circumstance, but, on the contrary, is directly contradicted by a number of witnesses and a number of circumstances. The verdict is so flagrantly against the evidence that we feel constrained to order a new trial."

The second appeal was reversed for the same reason, the court in its opinion citing the case of Continental Insurance Company v. Hargrove, 143 Ky. 400. These cases, together with others which might be referred to, fully justify our conclusion that the verdict in the instant case is flagrantly against the evidence.

Turning now to ground (3), it may be stated that the law governing the rights and duties of carrier and passenger in cases like this is that the train should be stopped a sufficient length of time to enable the passenger to alight therefrom with safety, and it is the duty of the passenger who desires to alight to do so without unnecessary delay It is furthermore held in this state that if the train does not stop a reasonably sufficient time to enable

the passenger to alight with safety, it would not be negligence *per se* for the latter to attempt to do so after the train started, provided it was not traveling at such a rate of speed as to make it apparent to an ordinarily prudent man that it would be dangerous to attempt it. In the latter event, the passenger may not recover although the carrier was derelict in its duty in failing to stop the requisite time. Among the numerous cases dealing with some or all of the phases of the law as above stated, are, L. & N. R. R. Co. v. Derrickson, 170 Ky. 334; L. & N. R. R. Co. v. Johnson, 168 Ky. 351; Paducah Traction Company v. Tolar, 162 Ky. 50; Louisville Railway Company v. Ruxer, 161 Ky. 312; Louisville & Interurban R. R. Co. v. App, 157 Ky. 246; C. & O. R. R. Co. v. Robinson, 149 Ky. 258; Dallas v. I. C. R. R. Co., 144 Ky. 737; I. C. R. R. Co. v. Whittaker, 22 Ky. Law Rep. 395; L. & N. R. R. Co. v. Eakin's Admr., 103 Ky. 465; L. & N. R. R. Co. v. Grimes, 150 Ky. 219; Hayden v. C., M. & G. R. R. Co., 160 Ky. 836, and Hughlett v. L. & N. Ry. Co., 15 Ky. Law Rep. 178.

Illustrating the views of this court upon the question involved, we take this excerpt from the Derrickson case:

"The rule in many jurisdictions, including this, is that it is not negligence *per se* for a passenger to undertake to alight from a slowly moving train at a time and place where it is the duty of the carrier to permit him to alight and where he has a right under his contract of carriage to alight. If in such cases the carrier, after stopping the train, should start it before the passenger had a reasonable opportunity to alight, and he should undertake to do so while the train was yet moving slowly, in order to avoid the inconvenience of being carried beyond his station, the question as to whether or not he was guilty of negligence would be one of mixed law and fact and should be submitted to the jury."

Instruction No. 1 given by the court upon its own motion, and to which defendant objected, did not conform to the law as above outlined, in that it authorized a verdict in favor of plaintiff if the jury believed from the evidence the sole fact that the train was started without giving reasonable time to plaintiff to alight therefrom, and by reason of which he was injured. There should have been incorporated in it a statement of the care to be observed by plaintiff while attempting to alight, and

without which observance he was not entitled to recover authough defendant may have been negligent in the respects stated.

The defendant offered instructions A and B, both of which were refused, but each of which attempted to submit defenses which the evidence authorized. Instruction A was the converse of instruction No. 1, to which the defendant was entitled, and instruction B authorized a finding for defendant if the jury believed from the evidence that plaintiff undertook to get off of the train after it had started. The latter instruction was erroneous in that it did not submit to the jury whether plaintiff was guilty of negligence in attempting to alight from the train after it had started, and treated the question as though such an attempt was *per se* negligence. It was, however, a concrete instruction upon a subject which the defendant had the right to have submitted to the jury, and under frequent rulings of this court it is the duty of the trial court in such cases to give the proper instruction, although the offered one was improperly worded.

We therefore conclude that for the errors indicated under ground (3), the judgment is also erroneous, and it is reversed with directions to grant a new trial, and to proceed in conformity with this opinion.