## Louisville & N. R. Co. v. Gregory.

Feb. 10, 1939.

H. T. LIVELY, THOMAS E. SANDIDGE and ASHBY M. WARREN for appellant.

W. W. KIRTLEY for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellee brought this suit in the Daviess circuit court to recover of appellant for certain personal injuries sustained by her while alighting from appellant's passenger train at Owensboro, Kentucky.

It is alleged in the petition that on the 20th day of September, 1936, plaintiff became a passenger on de-

fendant's train to be transported from Louisville, Kentucky, to Owensboro, Kentucky; that upon arrival of the train at Owensboro the train stopped and upon invitation of the agents of the defendant in charge of the train plaintiff walked out upon the platform of the coach to get off the train, and just as she reached the third step from the ground, the defendant, without notice or warning to the plaintiff, by its agents and employees, negligently, carelessly and recklessly operated the train so as to give the said train a sudden and violent jerk, which moved it forward suddenly and threw the plaintiff with great force from the car steps to the concrete platform adjacent to the train, a distance of several feet; that in said fall the plaintiff landed with great force upon her feet upon the concrete platform; that at the time plaintiff had in her arms her infant two-year-old son and was also accompanied by four of her small children, all of which was known to defendant or its employees. She described her injuries which resulted from the fall and prayed to recover the sum of $4,000 for personal injuries and $106 doctor bills, hospital bills, and other expenses incurred in the treatment of her injuries.

The case was tried to a jury and resulted in a verdict in favor of appellee in the sum of $1,606. Motion and grounds for a new trial were filed and overruled and this appeal follows.

The grounds relied upon for reversal are: (a) the verdict of the jury is flagrantly against the evidence; and (b) the damages awarded are excessive.

The appellee was the only witness who testified in support of her charge that the train jerked or lurched or that she fell while alighting from the train. Other witnesses introduced in her behalf were doctors whose testimony pertained only to the nature and extent of the injury received.

On direct examination appellee was asked to describe or tell what happened while she was getting off the train, and she answered:

"As I arrived at Owensboro and went to get off and was on the first step and started down the second one the train jerked me and made me fall to the platform and the conductor said 'Are you hurt lady?' and he said 'Do you want a taxi home?' and I said 'When I leave here I will get one myself.' "

Later she was asked:

"What caused you to fall off the step? A. The train moved I *suppose* (our italics) is the only way I could have fell.

"Q. And it caused you to miss the step? A. Yes sir, and I fell on the platform.

"Q. How did you fall on the concrete? A. On my feet."

Sam Dyer, flagman on the train, testified as follows:

"Q. Do you recall Mrs. Gregory, who is the plaintiff in this case, alighting from the train that night with her children? A. Yes sir.

"Q. Did anything unusual occur with respect to her getting off the train that night? A. Nothing that I noticed, no sir.

"Q. Did she fall from the steps of that train? A. No sir.

"Q. Was the train jerked or moved after it stopped at the station here in Owensboro? A. No sir.

"Q. How can you recall that particular night of her getting off there? A. I didn't know anything about it until the next day on my return trip the Trainmaster met me at the station and asked me in regard to that and described the party, and then I recalled, due to the fact that he mentioned she had several children, and I remembered then this lady got off, but up until then I knew nothing about it.

"Q. Do you remember the occasion she is complaining of now in this suit? A. I do.

"Q. And nothing unusual happened? A. No sir.

"Q. What kind of platform is that out at this station? A. It is a concrete platform the full length of the train as in any usual station.

"Q. Is there any particular reason why the train should stop and discharge passengers at any particular point on that platform? A. No sir.

"Q. How long is the platform? A. I would judge about six car lengths, and the coaches are 88 feet long. That is 6 times 88.

"Q. If a train comes in here from Louisville

and stops at that station the engine stops just east of Frederica Street? A. Yes sir.

"Q. Is there a water tower or coal chute near where the engine stops there? A. No sir.

"Q. Would there be any occasion for that train being moved after it once stops to discharge passengers? A. No sir.

"Q. Was it moved or jerked on this night? A. No sir, not that night, and I have been there 20 years and I never knew it to move after making one stop at that particular point."

The conductor, engineer and fireman on the train all testified positively that the train was not jerked or even moved after it came to a stop in Owensboro on that night.

Mrs. Goldie Trent, who resided next door to appellee, testified that about nine o'clock on the night appellee claims to have been injured, she, witness, and her husband were returning home from church and that appellee was standing in her front yard and she stopped and conversed with her but that appellee said nothing at that time about having fallen from the train or being hurt. However, on the following Wednesday or Thursday (the accident having occurred on Sunday previous) appellee told Mrs. Trent about having been injured and said that she was coming down off the steps of the train and hung her shoe heel and fell, but said nothing about the train having jerked.

Mrs. Joe Murray, another neighbor of appellee, testified that she had a conversation with appellee about two weeks after the time of the alleged injury and appellee told her that she had her little two-year-old boy in her arms and started to step off the train and stepped on the second step and stumbled and fell, but said nothing about the train having jerked or otherwise moved.

Mrs. Vallona Puckett, a practical nurse who attended appellee for several days after she returned from the hospital for treatment for her injuries, testified that appellee told her about stumbling as she came down the steps but said nothing about the train having jerked or having caught her heel on the step, but only said that she started stumbling and kept stumbling until she hit the ground and it jerked her considerably.

Mrs. Hallie Allen, who resides in Indianapolis but lived in Owensboro in 1936, testified as follows:

"Q. Were you frequently with her and in her home in 1936 when you were in Owensboro? A. I was.

"Q. Did she ever make any statements to you or say anything about what she intended to do in the event she became pregnant? A. Yes sir.

"Q. What did she say? A. Several things. For one thing she said she was going to make a trip and the first trip she was going to go to Bowling Green and something came up and she didn't do it and she made a trip to Louisville and after she made that trip she told me she was going to get that way and she was going to get on the train and she was going into the rest room and smoke a cigarette and on her way back out as the train started to stop she was going to pretend she fell and she was going to use a catheter. I have seen it several times in her home.

"Q. Do you mean she had a catheter? A. Yes sir.

"Q. And she said she was going to get on the train and use that to cause a miscarriage? A. Yes sir.

"Q. And then what was she going to do? A. Sue the railroad company."

Mrs. Roundtree was asked and answered as follows:

"Q. Did she say anything to you at that time about what she was going to do in the event she got in a family way or became pregnant again? A. We was lying on the bed one morning and she said 'Bessie, do you know what I am going to do if I get anything wrong with me?' and I said 'What?' and she said 'I am going to try and stand on the railroad or get on the railroad and make like I got hurt and then I can draw a lot of money I won't even have to sue,' She said 'I know a case that way and they didn't have to sue at all. They just paid her off.'

"Q. She knew of another case where a woman got a lot of money that way? A. Yes sir."

Mrs. Ruby Chafton testified that appellee made certain statements to her similar to those made to Mrs. Roundtree quoted above.

The evidence in this case is substantially the same as that in Illinois Central Railroad Company v. Long, Ky., 128 S. W. 890. That opinion reads as follows [page 891]:

"Alleging that she was injured by falling from a train upon which she was a passenger, caused by the negligence of the operatives in suddenly moving the train while she was attempting to alight at the station to which she had taken passage, the appellee brought this action to, and did, recover damages.

"Her statement that the injuries of which she complains were caused by the movement of the train is not supported by any other witness or circumstance, but, on the contrary, is directly contradicted by a number of witnesses and a number of circumstances. The verdict is so flagrantly against the evidence that we feel constrained to order a new trial.

"Wherefore the judgment of the lower court is reversed."

A second trial of the case, supra, again resulted in a verdict and judgment thereon for the plaintiff and was again appealed to this court (Illinois Central Railroad Company v. Long, 146 Ky. 170, 142 S. W. 212) and it appearing that the evidence on the second trial was substantially the same as on the former trial, the case was again reversed because the verdict of the jury was flagrantly against the evidence.

Also, in the case of Cincinnati N. O. & T. P. Railway Company v. Francis, 187 Ky. 703, 220 S. W. 739, where the facts were substantially the same as in the Long Case, supra, and in the case at bar, in that the plaintiff was the only witness who testified that the train jerked or was moved and was contradicted by various other witnesses, it was held that the verdict was flagrantly against the evidence and a new trial was ordered.

It is insisted for appellee that the cases supra relied on for appellant are not analogous to or in point with the present case, since there were other contradic-

tory facts and circumstances which more strongly militated against the plaintiffs in those cases than is shown in the present case. But, the facts in those cases and the c⌐⌐⌐ at bar are substantially the same and the differences are so slight that the cases can hardly be distinguished. However, be that as it may, in view of the evidence in this case we are constrained to the conclusion that the verdict of the jury is palpably against the evidence.

Since the case must be reversed on the evidence it becomes unnecessary for us to discuss or determine whether the damages awarded are excessive.

Judgment reversed and remanded for proceedings consistent with this opinion.